IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RAMON E. CASTRO**

    Plaintiff

    v.

**MIGUEL A. ROMERO LUGO AND HIS CONJUGAL PARTNERSHIP;**
**VANESSA Y. JIMÉNEZ CUEVAS AND HER CONJUGAL PARTNERSHIP;**
**REINALDO PANIAGUA LÁTIMER AND HIS CONJUGAL PARTNERSHIP;**

**INSPECTORS /ADVISORS A, B. C;**

**COMPLAINANTS M; N; P;**

**JOHN DOE;**
**CORPORATION X;**
**GOVERNMENT AGENCY YY;**
**INSURANCE COMPANY 1;**

    **Defendants**

CIVIL NO: 24-CV-1161 (PAD)

Action for:

Civil Rights; 42 USC §1983;
Equal Protection of the Law;
Usurpation /Unwarranted Seizure;
Excessive Unwarranted Fines;

Plaintiff demands trial by jury

## COMPLAINT

TO THE HONORABLE COURT:

    COMES NOW plaintiff Ramón E. Castro who acting *pro se* respectfully states and prays as follows:

## 2.0 PREFATORY

Mayor Miguel Romero and the Municipality of San Juan have abandoned their duty to provide basic notions of safety and security. Instead of defending properties against Criminality, Vandalism, Unlawful Garbage Dumping, etc.; Mayor Romero and the Municipality purport to penalize the properties that are the victims of such actions. Indeed, the case at hand describes a continuing practice and policy of arbitrary and irrational actions by government actors; fabrications; disparate treatment; attempted unwarranted seizure of our property; the imposition of excessive and unwarranted fines; etc. These practices and policies constitute a flagrant deprivation of our Civil Rights guaranteed by the Constitution of the United States of America; particularly the Equal Protection of the Law; as well as the 4th and 8th Amendments to the US Constitution.

Our home is located at 16 Ponce St., Hato Rey, PR.. It has been in our family for generations, we grew up there; and so did our children. It was in a good neighborhood; peaceful and secure. The property is conveniently located is a central area; with easy access to important points in the city. This specific area has not been subject to urban blight —although some homes have been vandalized. In fact, the property is surrounded on three (3) sides by the Auxilio Mutuo Hospital Complex —which has its own security personnel. Further, Auxilio Mutuo has also monopolized many of the nearby properties on that side of the street. Thus, our home should have enjoyed this additional measure of security, above and beyond the duty of the Municipal /State Police to safeguard citizens' property.

Our parents became ill, and in order to provide assistance, we moved to their location in the metropolitan area. It was to be but a temporary move, and most of our belongings remained in our home. We could not anticipate that the Municipal Police would practically refuse to defend our property; and that it would be repeatedly and incrementally vandalized. However, we did not abandon the property; and by no means can the property be considered a public nuisance. All to the contrary, the property has always been well regarded; and even after suffering from vandalism, it is still desirable by many —and even coveted by some. It is no secret that the Auxilio Mutuo Monopoly has shown interest.

The first Fabrications came in 2003. There was a time when the Municipality cleaned the streets, this service apparently is no longer provided. Instead, under Municipal Police Col. Mercado, we were cited because someone had deposited garbage on the sidewalk in front of our home. The situation did not require Sherlock Holmes: we were elsewhere and did not generate any garbage at all at that site —at the same time it was very obvious that the garbage was waste generated by the construction across the street. Despite our vehement protests, it was clear that the Municipal Police had no interest in defending our property from Vandalism, or from the unlawful garbage. Instead, under the pretext of "public nuisance", they Fabricated that we were responsible for such garbage; and imposed an unwarranted fine of $2000. To add insult to injury, what they required was that we place that garbage in plastic bags —and only then would the Municipality pick it up. Such abuse of police powers and unwarranted fines eventually led to the Federally mandated Police Reform in 2013.

Yet again in 2013 the Municipal Police Fabricates claims of "public nuisance". We protested that there was no basis for such accusation; and reaffirmed the need for the protection of our property. It was noted that we had never received any information on any complaint generated by any neighbor. Further, it was Disparate treatment; and the allegations were even frivolous. We cried out that if the Police "[…] cannot defend life and property, at least do not bother us […]". In that very same year, the Federally mandated Police Reform took effect; seeking to correct the "practice and policy" of "unconstitutional policing".

The relevant years have only shown repeated Vandalism, and the inability /disregard of the Municipality of San Juan's in the protection of our property. These years have been marked by appalling events: USA Banking Crisis (2008); PR Police Reform (2013); PR Bankruptcy Debacle (2014); Hurricane Maria (2017); Covid-19 (2020), PR Government Corruption and Abuse of Power, etc.. Further, we have suffered from some health and other unforeseen issues that at times have limited our activities. However, throughout this we have remained fully committed to the care and protection of our property.

In 2022 the Center for the Collection of Municipal Taxes (CRIM) changed our exemption related to the tax on our property. However, an unlawful, retroactive, and excessive penalty of $7,747.50 was suddenly imposed upon us. We informed the CRIM Director, Mr. Reinaldo Paniagua Látimer, that such penalty was arbitrary and wholly irrational; in fact, it is Ultra Vires —unwarranted by any law. The CRIM is effectively run by the Municipalities; and Mr. Paniagua has refused to correct the situation. What emerges appears to be a surreptitious policy to harass owners of unoccupied property; and force them to surrender such real estate.

Also in 2022, the Municipality again attempts to implicate us in their bogus "public nuisance"; with allegations of "deterioration" and "maintenance". We were told there had been a complaint, but neither the substance nor identity of the complainant was identified. At that time we were recovering from eye surgery; nevertheless, we responded that the real issues were Vandalism and Dumping of Garbage. Further, we demonstrated that the first task was to remove the infestation of trees that came from the adjacent Auxilio Mutuo Complex. We believed that our presentation had been understood; and proceeded to work on the trees. Removing the trees is a tedious and lengthy process, similar to a demolition. In fact, in 2023 we requested assistance from the Municipality, since LUMA (electric power company) had failed to remove some dangerous branches that leaned toward the street and the power lines.

Instead of assistance, in 2024 Ms. Vanessa Y. Jiménez Cuevas and the Municipality Fabricated a Bogus "Public Nuisance" (220P-58289QE-SJ). Nothing was provided that could even remotely substantiate such allegations; instead, Fabrications and Misrepresentations were launched by merely marking some boxes on a form —and the entire issue of Vandalism is fraudulently concealed. But the grossest Municipality Fabrication involves the very concept of the Bogus "Public Nuisance": this applies only to properties that have been abandoned by their owner. In contrast, the record clearly shows that, even under adversity, we continue to defend our property

—it is Mayor Romero and the Municipality that have abandoned their duty to provide safety and security, as well as complying with the Civil Rights guaranteed by the US Constitution.

Initially, we believed that Ms. Jiménez Cuevas' allegations were due to gross error /hidden agendas in her organization; thus, we expected that Mayor Romero could clarify the situation. On March 21, 2024 we visited the Mayor's office, and were received by his assistant: Ms. Rosa Maria Ortega. We were surprised to be informed that "Public Nuisance" is a central focus of Mayor Romero's effort; and Mayor Romero himself proudly proclaims that, as a Senator, he helped create the new nefarious "Public Nuisance" laws. The Mayor appears to divorced from problems of Criminality, Vandalism, Safety, Security, the Economic Downturn affecting the population, etc. Instead, Mayor Romero launches the incongruous proposition that "Public Nuisance" will somehow make San Juan "shine". Apparently, instead of a public-private partnership (ppp) what is proposed is a public-criminal partnership (pcp): Vandalism creates property damage; which allows the Municipal "Special Knowledge" group to descend upon the victims while proclaiming "Public Nuisance".

The concept of "Public Nuisance" may have a proper time and place; but not on our property, and certainly not by the false prophets of the devious "Special Knowledge" group. The Bible advises that such prophets can be detected since "By their fruits you shall know them". A glance at Mayor Romero's cherished law shows that: "Public Nuisance" allows the Municipality to descend upon private property and impose whatever conditions they choose. If immediate compliance is not shown, excessive fines are to be imposed. What is worse, the Municipality then confiscates the property; performs whatever actions they choose; gives out contracts to lawyers, consultants, builders, and other political buddies; all of which will be paid by mortgaging the private property at whatever interest they choose. Compliance is further imposed by pretending that all this is a Tax. There is another alternative: the Municipality will assess the damaged property at a devalued rate; expropriate the property; and then hand it over to some political buddy. We can see how this can make a few contractors and political buddies shine —but we do not believe this will help the overwhelming majority.

We have paid Municipal Taxes for decades, but we do not see the type of services we used to receive. What are they doing with our money?

The Prefatory is intended to provide an overview of the situation. Specific information can be found in the body of the Complaint, and in the enclosed materials.

## 3.0 JURISDICTION AND VENUE

3.0.1   The jurisdiction of this Court is invoked pursuant to 42 USC §1983 inasmuch as this case is brought for violation of Civil Rights under the Constitution of the United States of America. These violations of Civil Rights include the deprivation of the protection afforded by the 4th, 8th, and 14th Amendments to the U.S. Constitution, among others. Further, the Court is called upon to assume original jurisdiction in these matters in conformance with 28 USC §1331, §1343. Venue lies properly with this Court because the acts complained of herein occurred within the Commonwealth of Puerto Rico; and at the time, all parties resided in this location to the best of the available information.

3.0.2   Although Federal Question issues are predominant in this action, the Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 USC 1367; and such that the Court addresses any related matter of state law; as well as any related issue of pendent parties.

## 4.0 THE RELATIONSHIP BETWEEN THE PARTIES AND THE DEFENDANTS' UNCONSTITUTIONAL /ILLEGAL ACTS

### 4.1  In General

4.1.1   All the Codefendants have been sued in their personal capacity. The known Codefendants have been listed in the heading to this case.

4.1.2   The enclosed APPENDIX contains numerous communications with the Codefendants; describing and protesting their unconstitutional /improper actions. Thus, the APPENDIX is incorporated in this Complaint as if perfectly transcribed herein.

4.1.12    Unknown Complainants include any entities issuing frivolous, unsubstantiated, misleading, malicious, or otherwise improper complaints to the Municipality of San Juan or other state agencies. At this time, we have not been informed of any allegation by any Complainant. Nor has any Complainant ever been identified.

4.1.13    Government Agency YY represents all unknown state and/or municipal government organizations that can be sued and have incurred in liability due to (among others) illegal acts, omissions, deprivations of Civil Rights, etc., such they are or may be civilly responsible to plaintiffs.

4.1.14    Insurance Company 1 is one or more insurance companies that at the relevant times had issued and in effect one or more policies of insurance that covered the risks mentioned on this complaint.

## 4.2  A Background of Disparity and Bogus "Public Nuisance" by the Municipality of San Juan

4.2.1    Documents **D-7, D-8, D-9**, describe numerous previous attempts to fabricate a Bogus "Public Nuisance" —and even include a $2,000 Bogus Excessive Fine [e.g. **D-8**]

4.2.2    Moreover, the Disparity involved is shocking, and can clearly be seen in Photos **P-2, P-5, P-6**; and more recently in **P-12, P-13**. While our property is constantly harassed, the Auxilio Mutuo Monopoly remains unscathed.

## 4.3  Codefendant Vanessa Y. Jiménez Cuevas and the Practice and Policy of Abuse of Power with the Notion of Bogus "Public Nuisance" —in Deprivation of the Equal Protection of the Law

4.3.1    Codefendant Jiménez is the Director of the Municipality of San Juan's Legal Division.

4.3.2	Codefendant Jiménez created a Bogus "Public Nuisance" [**D-5**] pursuant to the Practice and Policy set forth by Codefendant Mayor Romero.

4.3.3	Codefendant Jiménez fabricated the Bogus "Public Nuisance" in disregard of the facts that had been presented long ago: see **D-2, D-3, D-4**. Notably, the entire issue of rampant Vandalism is fraudulently concealed.

4.3.4	The Bogus "Public Nuisance" is Fabricated on the basis of a few unsubstantiated allegations; that consist of only but marking boxes on a pre-printed form:

a.  Abandoned Structure
b.  Prejudicial to Public Security
c.  Prejudicial to Public Health
d.  Uninhabitable Structure
e.  Lack of Cleanliness
f.  No Electric Power
g.  No Water

4.3.5	NO Abandonment. The fraudulent nature of these allegations was presented in a letter to Codefendant Mayor Romero [**D-1**]. Perhaps the most glaring fabrication in the Bogus "Public Nuisance" [**D-5**] is the contention that the property was "Abandoned". The very notion of "Public Nuisance" is a state intervention predicated upon the fundamental legal condition that the owner has renounced his rights to the property —or cannot even be located. This is NOT the case here; where we have always defended the property; always paid property tax; and the APPENDIX shows a long history of rejecting the fabrication of a Bogus "Public Nuisance".

4.3.6	Equally oppressive, is the outrageous attempt to fabricate a security issue when Codefendant Jiménez and Codefendant Mayor Romero have shamefully ignored an urgent issue of dangerous trees —divorcing themselves from any notion of safety and security [**D-1, D-2, D-3**]

4.3.7    What emerges is that Codefendant Jiménez and Codefendant Mayor Romero have created a "Special Knowledge" group that can define or fabricate anything in order to create a Bogus "Public Nuisance" —an abuse of power that is wholly arbitrary and irrational in in deprivation of the Equal Protection of the Law.

4.3.8    Further, this not only represents an unconstitutional intrusion into private property; but inflicts grievous harm by unlawfully and arbitrarily subjecting citizens to additional fines and oppressive measures contained in the Public Nuisance law espoused by Codefendant Mayor Romero.

**4.4   Codefendant Mayor Romero Has Fostered the Practice and Policy of Abuse of Power with the Notion of Bogus "Public Nuisance" —in Deprivation of the Equal Protection of the Law.**

4.4.1    Codefendant Miguel A. Romero is the mayor of the Municipality of San Juan.

4.4.2    In Photo /Attachment **A-2** Codefendant Mayor Romero promises that communities will "shine" with reconstruction. Given the Government Bankruptcy Debacle, it difficult to see how such "reconstruction" would be financed. Codefendant Romero advances the strange notion that the "shinning" can be achieved through "Public Nuisance". That is, all is wonderful if he can take other peoples' property.

4.4.3    Initially we believed that Codefendant Jiménez has simply committed gross error; and therefore, we wrote to Codefendant Mayor Romero [see **D-1**]. Much to our surprise, the Mayor's assistant, Ms. Rosa Maria Ortega, informed us that "Public Nuisance" was Codefendant Mayor Romero's "crowning achievement" —which we later verified with items such as **A-2.**

4.4.4    Consequently, the Bogus "Public Nuisance" fabricated by Codefendant Jiménez, was launched pursuant to Codefendant Mayor Romero's practice and policy; and Codefendant Mayor Romero fully shares all the deficiencies contained in **D-1**.

## 4.5 Codefendant Mr. Reinaldo Paniagua: Excessive Unwarranted Fines in deprivation of the Equal Protection of the Law, as well as the 4th and 5th Amendments.

4.5.1    Codefendant Reinaldo Paniagua Látimer is the Director of CRIM, an organization for the collection of Municipal Taxes. The entire organization is subordinate to the Mayors of the various municipalities.

4.5.2    **D-6** is a letter to Codefendant Paniagua requesting that he correct some Bogus Excessive Fines that had been imposed upon us. Such fines were simply unwarranted under both previous law (83-1991), as well as existing law (107-2020).

4.5.3    By now it has become clear that Codefendant Paniagua has stubbornly refused to correct the situation. But more importantly, the Bogus Excessive Fine appears closely related to the Practice and Policy of Abuse of Power with the Notion of Bogus "Public Nuisance"

4.5.4    The Bogus Excessive Fines target property owners who moved from their previous homes, but retain that real estate. These may be unoccupied homes which are also the target of the Bogus "Public Nuisance". Moreover, the "Public Nuisance" law —which should have nothing to do with taxes— purports to use CRIM as a tool for collection and harassment.

## 6.0 SOME REQUIRED STANDARDS OF EVALUATION

### 6.0a Bill of Rights For Senior Citizens

6.0a.1    8 LPRA § 341: Public Policy. The Commonwealth of Puerto Rico recognizes its responsibility to provide [...] adequate conditions that promote for Senior Citizens the <u>enjoyment of a full life</u> and <u>the exercise</u> of their <u>natural, human, and legal rights.</u> [...]

6.0a.2    8 LPRA § 341 (e): The <u>protection</u> of their physical or mental health <u>and of their property</u> against threats, harassment, coercion or perturbation by any person.

6.0a.3    8 LPRA § 343 (a): [Every Senior Citizen will have the right to:] Secure the **guarantee of all** the <u>rights, benefits, responsibilities, and privileges</u> granted by the Constitution of

the Commonwealth of Puerto Rico and <u>the Constitution</u>] <u>of the United States of America; as well as the laws and regulations</u> of the Commonwealth of Puerto Rico and the United States of America. (our emphasis)

      6.0a.4        8 LPRA § 343 (b): Remain free of interference, coercion, discrimination, or reprisals in the exercise his civil rights.

      6.0a.5        8 LPRA § 343 (d): Live <u>free of pressure, coercion, and manipulation</u> from family, **private persons** or **from the State** that are intended <u>to undermine</u> his capacity and his right to <u>self-determination</u>. (our emphasis)

      6.0a.6        8 LPRA § 343 (n): Receive <u>protection</u> and both <u>social and physical security</u> against <u>physical or emotional abuse</u>, as well as <u>psychological pressure</u> by any person.

      6.0a.7       8 LPRA § 346 (a): Protective Orders

## 6.2   Federal Jurisprudence

<u>Bracy v. Gramley</u>, 502 U.S. 899 (1997)
"[…] the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, […] clearly requires a "fair trial in a fair tribunal," before a judge with no actual bias against the defendant or interest in the outcome of his particular case." (at 904-905, citations omitted)

<u>Bright v Westmoreland County</u>, Case 03-4320, Court of Appeals for the 3rd Cir. (2004)
"Judicial opinions are the core work-product of judges. They are much more than findings of fact and conclusions of law; they constitute the logical and analytical explanations of why a judge arrived at a specific decision. They are tangible proof to the litigants that the judge actively wrestled with their claims and arguments and made a scholarly decision based on his or her own reason and logic."

"We have made it clear that the linchpin in using findings of fact […] is evidence that they are the product of the trial court's independent judgment."

"Courts and judges exist to provide neutral fora in which persons and entities can have their professional disputes and personal crises resolved. Any degree of impropriety, or even the appearance thereof, undermines our legitimacy and effectiveness."

<u>Willowbrook v. Olech</u>, 528 U.S. 562 (2000)
a. "Our cases have recognized successful equal protection claims brought by a "class of one," […]" (at 564-565)

4.1.3   The APPENDIX materials that were originally issued in Spanish. English translations will be provided; but due to the volume of these materials, this process will take some time.

4.1.4   Photos that were provided in past communications, have been summarized and included in the APPENDIX. They are also incorporated as if perfectly transcribed herein.

4.1.5   The general background for the matters at hand is provided in Photo **A-1**, which documents a general concern with local Government Corruption; particularly in the wake of an Economic Debacle /Bankruptcy, as well as continuing revelations of wrongdoing.

4.1.6   The issues revolve around Plaintiff's private property, which has been in our family for generations.

4.1.7   We have not had time to fully explore and understand the Municipality of San Juan's organization chart; thus titles will be presented to the best of our knowledge.

4.1.8   The relevant Codefendants have fraudulently concealed that damages to Plaintiff's property resulting mainly from rampant Vandalism, Theft, and improper actions by other entities. Codefendants have attempted to conceal and misrepresent these issues as matters of maintenance or deterioration.

4.1.9   A Bogus "Public Nuisance" document was fabricated; this document is shown in **APPENDIX D-5**.

4.1.10   A Bogus Excessive Fine was fabricated; this is discussed in **D-6**.

4.1.11   Unknown Codefendants include Advisors /Consultants /Contractors that have generated, certified, or otherwise aided misrepresentations regarding Plaintiff's actions or property. These entities are state actors since they have acted jointly with government personnel in the deprivation of Civil Rights under the US Constitution.

   b. "[…] we have explained that [t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." (at 564-565)

   c. "The complaint also alleged that the Village's demand was "irrational and wholly arbitrary" […] These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis." (at 565)

West v. Atkins, 108 S.Ct. 2250:
 "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." See Monroe v. Pape, 81 S.Ct., (at 476)." (quoted in West v. Atkins at 50)

U.S. v. Price, 86 S. Ct. 1152, (1966)
"Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law *does not* require that the accused be an officer of the State. It is enough that he is a willful participant in *joint activity* with the State or its agents." (at 794)

Shelley v. Kraemer, 68 S.Ct. 836, (1948)
"State action, as that phrase is understood for the purposes of the Fourteenth Amendment, refers to *exertions of state power* in all forms. And when the effect of that action is to deny rights subject to the protection of the Fourteenth Amendment, it is the obligation of this Court to enforce the constitutional commands." (at 20-21)

Lugar v. Edmondson Oil Co., 102 S.Ct. 2744, (1982)

   a. […] the party charged with the deprivation must be a person who may fairly be said to be a *state actor*. This may be because he is a *state official*, because he has *acted together with* or *has obtained significant aid from* state officials, or because his *conduct is otherwise chargeable* to the State."

   b. "[...] we have consistently held that a private party's joint participation with state officials in the *seizure* of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment."

Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970)
"The *involvement of a state official* ... plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment […]"

Monroe v. Pape, 365 U.S. 174:
"The court concluded that section 1983 had three principal aims:

a. override certain kinds of state laws,
b. to provide a remedy where state law was inadequate,
c. to provide a remedy where state remedy, though adequate in theory, was unavailable in practice."

Also, the exhaustion of state remedies is generally not required when seeking protection under 42 USC §1983: "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.

Monroe v. Pape, 365 U.S. 174:
"It is abundantly clear that one reason the legislation [42 USC §1983] was passed was to afford a federal right in federal courts because, by reason of prejudice, neglect, intolerance, or otherwise, state laws might not be enforced and the claims of citizens to enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies."

Patsy v. Board of Regents, 102 S.Ct. 2557 (1982):
a. "[…] exhaustion of state administrative remedies should not be required as a prerequisite to bringing and action pursuant to §1983" (at 2564).
b. "The 1871 Congress intended […] to 'throw open the doors of the United States courts' to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights […] and to provide these individuals with *immediate access* to the Federal Courts notwithstanding any state provision to the contrary." (at 2562) (our emphasis)

Mitchum v. Foster, 407 U.S. 225:
"The very purpose of s 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights--to **protect the people** from unconstitutional action under color of state law, 'whether that action be **executive, legislative, or judicial**.' […] In carrying out that purpose, Congress plainly authorized the federal courts to **issue injunctions in s 1983 actions** […]"

Gutiérrez v. Cartagena, 882 F.2d 553 (1989):
a. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an affirmative act which he is legally required to do, that causes the deprivation of which complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who 'causes any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting

in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."
b. "We hold that <u>indifference</u> that rises to the level of being deliberate, reckless or callous, suffices to establish liability under §1983."
c. "Cartagena was at once the actor furthest removed from the drama and the <u>director of the play</u>".

Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982):
a. A <u>property interest</u> was recognized in the <u>state procedure itself</u>.
b. "Fourteenth Amendment's Due Process Clause has been interpreted as <u>preventing</u> the States <u>from denying</u> potential litigants use of <u>established adjudicatory procedures</u>.    (at 430)".
c. "The hallmark of property, the Court emphasized, is an <u>individual entitlement</u> grounded in state law, which <u>cannot be removed except for cause</u>. (at 431)... Once that characteristic is found, the types of interests protected as 'property' are varied and, as often as not, intangible, relating 'the whole domain of social and economic fact'".
d. The *same set of facts* gave rise to the deprivation of *both* Due Process (main opinion) and the Equal Protection of the Law (separate opinions).
e. As stated by Justice Blackmun: "rationality is absent here"; and the state had run afoul of the "lowest [most basic] level of permissible equal protection scrutiny".
f. Additionally, the <u>Logan</u> Court (supra) found that a Tort suit was NOT an adequate substitute for existing laws and procedures that provide citizens with *predeprivation* protection: "[...] a post-deprivation hearing here would be constitutionally inadequate... That is particularly true where, as here, the State's only post-termination process comes in the form of an independent tort action. Seeking redress through a <u>tort suit is apt to be a lengthy and speculative process</u>, which <u>in a situation such as this will never make the complainant entirely whole</u>:...(at 437)"

Moses H. Cone v. Mercury Construction Co., 460 U.S. 1
a. "The presence of Federal Law issues must always be a major consideration weighing against surrender."
b. The other factor counseling against surrender was the "probable inadequacy" of the state-court proceedings to protect the federal plaintiff's rights

Tovar v. Bilmeyer, 609 F.2d 1291
"... the 'unflagging obligation' of the federal courts to exercise the jurisdiction given them ... <u>this obligation is particularly weighty</u> when those seeking hearing in federal court are asserting, as the appellants are here, their right to relief under 42 USC §1983. Under such circumstances conflicting results, piecemeal litigation, and some duplication of judicial is the unavoidable price of preserving access to the federal relief which section 1983 assures"

Shelley v. Kraemer, 68 S.Ct. 836 (1948)

a. "And it would appear beyond question that the power of the State to create and enforce property interests must be exercised within the boundaries defined by the Fourteenth Amendment." (at 22-23)
b. We have noted that previous decisions of this Court have established the proposition that judicial action is not immunized from the operation of the Fourteenth Amendment simply because it is taken pursuant to the state's common-law policy." (at 20-21)
c. "But the examples of state judicial action which have been held by this Court to violate the Amendment's commands are not restricted to situations in which the judicial proceedings were found in some manner to be procedurally unfair. It has been recognized that the action of state courts in enforcing a substantive common-law rule formulated by those courts, may result in the denial of rights guaranteed by the Fourteenth Amendment, even though the judicial proceedings in such cases may have been in complete accord with the most rigorous conceptions of procedural due process." (at 17-18, our emphasis)
d. "It is clear that but for the active intervention of the state courts, supported by the full panoply of state power, petitioners would have been free to occupy the properties in question without restraint." (a 19)
e. The difference between judicial enforcement and nonenforcement of the restrictive covenants is the difference to petitioners between being denied rights of property available to other members of the community and being accorded full enjoyment of those rights on an equal footing.

### 7.0. CLAIMS FOR RELIEF
(Violation of Civil Rights)

**7.1  Codefendant Mayor Romero has created /condoned /callously allowed a continuing practice and policy of abuse of power; abuse of the concept of "Public Nuisance". These actions are "irrational and wholly arbitrary" in Deprivation of the Equal Protection of the Law and the 14th Amendment; as well as the provisions of the 4th and 8th Amendments to the US Constitution.**

      7.1.1      We restate and re-allege all the foregoing, as if perfectly transcribed herein.

      7.1.2      Mayor Miguel Romero and the Municipality of San Juan have abandoned their duty to provide basic notions of safety and security. Instead of defending properties against Criminality, Vandalism, Unlawful Garbage Dumping, etc.; Mayor Romero and the Municipality purport to penalize the properties that are the victims of such actions. Mayor Romero has created

/participated continuing practice and policy of abuse of power; abuse of the concept of "Public Nuisance"; arbitrary and irrational actions by government actors; fabrications; disparate treatment; attempted unwarranted seizure of our property; the imposition of excessive and unwarranted fines; etc. These practices and policies constitute a flagrant deprivation of our Civil Rights guaranteed by the Constitution of the United States of America; particularly the Equal Protection of the Law; as well as the 4th and 8th Amendments to the US Constitution.

   7.1.3  The disparate nature of these actions is evident in the enclosed photos; among others.

**7.2 Codefendant Vanessa Y. Jiménez Cuevas has executed the continuing practice and policy of abuse of power; and abuse of the concept of "Public Nuisance". These actions are "irrational and wholly arbitrary" in Deprivation of the Equal Protection of the Law and the 14th Amendment; as well as the provisions of the 4th and 8th Amendments to the US Constitution.**

   7.2.1  We restate and re-allege all the foregoing, as if perfectly transcribed herein.

   7.2.2  Codefendant Jiménez is part of "Special Knowledge" group that can arbitrarily fabricate, misrepresent, and otherwise proclaim a Bogus "Public Nuisance" —with unsupported allegations launched by making a box on a form.

   7.2.3  The disparate nature of these actions is evident in the enclosed photos; among others.

   7.2.4  There has also been Callous and Deliberate Indifference to Public Safety and Security.

**7.3 Codefendant Paniagua has acted in complicity with Mayor Romero's practice and policy of abuse of the concept of "Public Nuisance". Despite being made aware the imposition of certain fines was ultra vires, Codefendant Paniagua refused to correct the situation, and continued to impose unwarranted excessive fines. Thus, the CRIM can be turned into an oppressive weapon against citizens that have targeted under the**

pretext of "Public Nuisance". These actions are "irrational and wholly arbitrary" in Deprivation of the Equal Protection of the Law and the 14th Amendment; as well as the provisions of the 4th and 8th Amendments to the US Constitution.

7.3.1   We restate and re-allege all the foregoing, as if perfectly transcribed herein.

7.3.2   As noted above [see also document **D-6**], Codefendant Paniagua persists in an abuse of power; and purports to inflict excessive fines that unwarranted, oppressive, and not supported by either previous nor present law.

### 8.0. Trial By Jury Demand:  The Need for Urgent Action

8.0.1   The Plaintiff demands a Trial by Jury.

8.0.2   Given the nature of the case at hand, Plaintiff finds himself in fear of perpetual intervention and harassment; as well as a never-ending barrage of false accusations /complaints by the Codefendants.

8.0.3   Security and Safety. The Codefendants have shown themselves to be divorced from basic notions of Safety and Security; which only exacerbates their fabrications.

8.0.4   Prompt discovery and a speedy trial are necessary.

### 9.0   REMOVAL

**9.1 Removal of Related Actions and Prevention of Malicious and Vexatious Litigation**

9.1.1   Given the Codefendants' abuse of power and fabrication of a Bogus "Public Nuisance"; we respectfully beseech the Honorable Court to ensure the protection of the U.S. CONSTITUTION by Removing to the Federal District Court any spurious and vexatious state litigation: whether it be Civil litigation removed under 28 USC §1441; or whether it be Criminal litigation under 28 USC §1455

### 10.0 Punitive Damages

10.0.1     The Codefendants and their relevant conjugal partnerships, are to pay Ramón Castro punitive damages in an amount in excess of $325,000 for their Continued Violations of Civil Rights spanning a period of years; for the Oppressive Burdens, and Personal hardships caused Continued Fabrication of a Bogus "Public Nuisance"; for the violation of the laws; for the Callous and Deliberate Indifference to Safety and Security; and the failure to protect our property from Vandalism and Criminality.

10.0.2     Provision is requested to adjust the amount of Punitive Damages in light of consolidations, additional improper actions by the Codefendants, etc.

### 11.0 Prayer

WHEREFORE, Plaintiff prays this Honorable Court to:

11.0.1     Issue a declaratory judgment indicating that Ramon Castro has never abandoned the relevant property; and that the allegations of abandonment by Codefendant Jiménez in the Bogus "Public Nuisance" are a fabrication in deprivation of the Equal Protection of the Law.

11.0.2     Issue a declaratory judgment indicating that Codefendant Jiménez, Codefendant Mayor Romero, have failed to address and fraudulently concealed the rampant Vandalism throughout the Municipality of San Juan. Further, the Bogus "Public Nuisance" addresses damages to Ramon Castro's property that are mainly due to Vandalism, Theft, and the action of others —and not due fabricated "deterioration", "maintenance", etc. Such fraudulent concealment constitutes a deprivation of the Equal Protection of the Law.

11.0.3	Issue a declaratory judgment indicating that Codefendant Jiménez and Codefendant Mayor Romero have shown gross disregard for Public Safety and Security in failing to protect against dangerous trees — in deprivation of the Equal Protection of the Law.

11.0.4	Issue a declaratory judgment indicating that Codefendant Jiménez created a Bogus "Public Nuisance" based on a fabrication of alleged "prejudice to public security". NO substance whatsoever was provided for such fabrication; which was launched by merely marking a box in a pre-printed form. Such fabrications constitute a deprivation of the Equal Protection of the Law.

11.0.5	Issue a declaratory judgment indicating that there is no substance to allegations contained in the Bogus "Public Nuisance" created by Codefendant Jiménez pursuant to a policy and practice of abuse of power fostered by Codefendant Mayor Romero. Such fabrications constitute a deprivation of the Equal Protection of the Law

11.0.6	Issue a declaratory judgment indicating that Codefendant Paniagua obstinately refused to correct unwarranted Bogus Excessive Fines that were not supported by law i.e. ultra vires —in deprivation of the Equal Protection of the Law, as well as the 4th and 8th Amendment

11.0.7	Order Codefendant Mayor Romero, Codefendant Jiménez, and Codefendant Paniagua to cease and desist from any actions, interference, retaliation, fines, etc., against Mr. Castro. Any legitimate matters are to be removed and addressed under the supervision of the Federal Court.

11.0.8	Order Codefendant Paniagua and his conjugal partnership to pay Ramon Castro punitive damages in an amount in excess of $75,000 for obstinately failing to correct unwarranted Bogus Excessive Fines.

11.0.9    Order Codefendant Mayor Romero, Codefendant Jiménez, and their respective conjugal partnerships, to pay Ramón Castro punitive damages in an amount in excess of $250,000 for their Continued Violations of Civil Rights; for the Oppressive Burdens and Personal hardships caused by unwarranted harassment; for Callous and Deliberate Indifference to Safety and Security; and for their arbitrary and irrational abuses of power.

11.0.10   Order the Codefendants to pay, jointly and severally to this Plaintiff in accordance with 42 USC §1988, attorneys' fees, costs, and expenses of the instant case as applicable.

11.0.11   Enter and issue any other remedy that is proper at law or equity.

In San Juan, Puerto Rico, this _3rd__ day of APRIL, 2024

Ramón E. Castro
HC-03 Box 12913
Carolina, Puerto Rico  00987                By:   *Ramón E. Castro* (signature)
Tel: (787) 325-7772

                                                 Ramón E. Castro
                                                 *pro se*