IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAMÓN E. CASTRO

*Plaintiff*

v.

MIGUEL A. ROMERO LUGO AND HIS
CONJUGAL PARTNERSHIP; ET AL.

*Defendants*

Civil Case No.: 24-1161 (PAD)

**RENEWED MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, FOR OTHER RELIEF**

**TO THE HONORABLE COURT:**

**COME NOW,** the appearing Defendants, the Honorable Miguel A. Romero Lugo, Mayor of the Municipality of San Juan (the "Municipality"), in both his personal capacity and his official capacity as Mayor of the Municipality; and Vanessa Jiménez-Cuevas, in both her personal capacity and her official capacity as Director of Legal Affairs for the Municipality (the "Appearing Defendants"), who specially appear through the undersigned counsel without submitting to the jurisdiction of this Court, and respectfully **ALLEGE** and **PRAY** as follows:

I.     **Preliminary Statement and Facts Relevant to the Motion to Dismiss**

Plaintiff Ramon E. Castro ("Castro" or the "Plaintiff") proceeding pro se, filed a complaint on April 16, 2024. The Complaint with its Appendix[1] spans 56 pages (the

---

[1] The vast majority of the documents in the Appendix were filed in Spanish and the Plaintiff has not provided a certified translation of them and they should not be considered by the Court. This Court has recognized that "a litigant's exercise of his right to self-representation does not exempt him from complying with the relevant rules of procedural and substantive law." Arroyo v. Puerto Rico Police Dept., 60 F.Supp.3d 327, 331 (D.P.R. 2014)(citing Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir.1994). Accord Triantos v. Guaetta & Benson, 91 F.4th 556, 562 (1st Cir. 2024)("[T]he right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law,'")(quoting Eagle Eye Fishing, 20 F.3d at 506); Thompson v. U.S.,

"Complaint" or "Cpt.")(Docket No. 1), and includes references to the "USA Banking Crisis", "PR Police Reform", "PR Bankruptcy Debacle", "a public-criminal partnership", "false prophets", Bill of Rights for Senior Citizens and restrictive covenants, Cpt. at pp. 3, 4, 10-11,[2] all of which have no obvious connection to the Plaintiff and the claims he purports to raise in the Complaint. The Complaint claims federal question jurisdiction under 28 U.S.C. §1331 and §1343, supplemental jurisdiction under 28 USC §1367, and purports to assert Civil Rights violations, equal protection claims and violations of the Fourth, Fifth,[3] Eighth and Fourteenth Amendments to the U.S. Constitution, brought under 42 U.S.C. § 1983. Cpt. at pp. 1-2, 4-7, 9-

---

64 F.4th 412, 424 (1st Cir. 2023)(same); and Tang v. Citizens Bank, 821 F.3d 206, 220 (1st Cir. 2016)(same). L.Civ.R. 5(c) which governs "Translations" provides, "All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English which meets one of the following criteria: (1) Is prepared by an interpreter certified by the Administrative Office of the U.S. Courts, or (2) Is prepared by a translator who has approved Phase I (written legal translation) of the Federal Court Interpreters Certification Examination, or (3) Is prepared by a translator who is certified by the American Translator Association, or who has a post-graduate degree from an accredited post-graduate education translation program; or (4) Is otherwise stipulated as accurate by all parties." The Plaintiff has submitted various translations which do not comply with L.Civ.R. 5(c)'s requirements. See Docket Nos. 12, 19, 24, 30 submitting translations which have neither been certified nor have they been stipulated to by all of the parties. The Court has issued two court orders warning Plaintiff of his obligation to comply with L.Civ.R. 5(c), See April 23, 2024 Order (Docket No. 16), and that "'[t]he court is bound by Local Rule 5 which mandates that translations for documents not in the English language must be prepared by a certified translator or interpreter unless "otherwise stipulated as accurate by all parties.' In other words, unless all parties stipulate that plaintiff's self-prepared translations are accurate the court may not and will not consider them." See May 8, 2024 Order (Docket No. 20). Plaintiff nonetheless at his peril has continued to submit non-certified translations after issuance of the two orders and with the exception of Docket Nos. 25-1 and 26-1 (Appendix, Exhibits D-1 and D-6) has not submitted compliant translations. Those two translations are the only ones properly before the Court and the rest of the Appendix is not and should be disregarded.

[2] Appearing Defendants are citing to the page numbers of the Complaint itself and not to the pagination in the version at Docket #1 since page 6 of the Complaint in Docket #1 is out of place, not after page 5 but after page 11.

[3] The Fifth Amendment claim is not raised as to Appearing Defendants in the Complaint, but only as to Reinaldo Paniagua, See Cpt. at p. 10, the defendant who is the Director of El Centro de Recaudación de Ingresos Municipales ("CRIM"). CRIM is a Puerto Rico agency, independent and separate from any other agency or instrumentality of the Government of the Commonwealth of Puerto Rico, which is responsible for collecting property taxes on behalf of Puerto Rico municipalities which was created pursuant to Law No. 90 of August 30, 1991. See In re MJS Las Croabas Properties, Inc., 2018 WL 5226082, at *1 (1st Cir.BAP Oct. 18, 2018). As a result, the Fifth Amendment argument need not be addressed by Appearing Defendants and will not be addressed in this motion.

20. The Plaintiff seeks as relief, punitive damages, declaratory relief, equitable relief and the payment of costs and attorneys' fees. Cpt. at pp. 18-20.

The main genesis of the Complaint seems to be a dispute over the Plaintiff's failure to properly maintain real property and an unoccupied former residence located at 16 Ponce Street in the Hato Rey section of San Juan. Cpt. at p. 2. While the Plaintiff lived at such address at some point in time, the structure apparently has not been inhabited since 2003, or for more than two decades. See Cpt. at p. 2;[4] Defendant Reinaldo Paniagua Latimer's May 21, 2024 Motion to Dismiss (Docket No. 21) at pp. 2, 5, 7; Plaintiff's June 4, 2024 Opposition to Motion to Dismiss (Docket No. 27) at p. 11; Appendix, Exh. D-1, certified translation of Plaintiff's March 21, 2024 letter to Mayor Miguel A. Romero Lugo (Docket 26-1) at p.1; and Appendix, Exh. D-6, certified translation of Plaintiff's July 22, 2022 letter to CRIM Executive Director Reinaldo Paniagua Latimer (Docket 25-1) at p.1. There have been problems for some time with garbage collecting on such property, the Plaintiff's general lack of regular upkeep and maintenance on the property and the deterioration of both the property itself and the structure located on such property.[5]

Specifically disputes have arisen between the Municipality and the Plaintiff as to whether the property and the uninhabited dwelling on it have become a public nuisance, including issues: as to the cleanliness of the property, whether the property and the structure on it are prejudicial to public health and public security, whether the structure on such property is habitable, and

---

[4] See Cpt. at p. 2 ("Our parents became ill, and in order to provide assistance, we moved to their location in the metropolitan area. … The first Fabrications came in 2003. … we were cited because someone had deposited garbage on the sidewalk in front of our home. The situation did not require Sherlock Holmes: we were elsewhere and did not generate any garbage at all at that site - …").

[5] Cpt. at pp. 2-4, 6-8, 15-16, 18; Appendix, Exh. D-1, Plaintiff's March 21, 2024 letter to Mayor Romero Lugo (Docket 26-1) at pp. 1-3; and Appendix, Exh. D-6, Plaintiff's July 22, 2022 letter to Reinaldo Paniagua Latimer (Docket 25-1) at pp. 1, 4.

whether it has been abandoned.[6] The Plaintiff has acknowledged that the electrical wiring and the water pipes have been destroyed in the structure and by the Plaintiff's own admission the former residence is "uninhabitable".[7]

These issues resulted in the issuance on February 27, 2024 by the Municipality's Office of Legal Affairs of "Querella y Notificación de Intención de Declarar Propiedad Como Estorbo Publico" (Complaint and Notice of Intent to Declare Property a Public Nuisance) regarding this property (Urb. Perez Morris, 16 Ponce Street, San Juan, PR 00987), issued in Case number 22OP-58289QE-SJ, which was sent to the Plaintiff by certified mail.[8]

The Complaint and Notice of Intent to Declare Property a Public Nuisance notified the Plaintiff that the Municipality's Office of Legal Affairs had conducted an investigation regarding Plaintiff's property located at Urb. Perez Morris 16 Ponce Street Hato Rey San Juan Puerto Rico 00917 and had determined after such investigation that such property qualified to be declared a public nuisance in accordance with Article 4.008 et seq., and 8.001(98) of Act 107 of 2020, as amended, the Municipal Code of Puerto Rico, 21 L.P.R.A. § 7001 (the "Municipal Code") and Art. 15.201 et seq. and Article 15.105(j) of Chapter XV, of the Municipality of San Juan Urban Planning Code, as amended by Ordinance No. 1, Series 2021-2022, passed on July 22, 2021 (the "Urban Planning Code"). See Exhibit 1 hereto at p. 1.  The Urban Planning Code, among other

---

[6] Cpt. at pp. 2-4, 6-10, 15-16, 18; and Appendix, Exh. D-1, Plaintiff's March 21, 2024 letter to Mayor Romero Lugo (Docket 26-1) at pp. 1-3.

[7] See Appendix, Exh. D-6, certified translation of Plaintiff's July 22, 2022 letter to Reinaldo Paniagua Latimer (Docket 25-1) at p. 1.

[8] See February 27, 2024 Querella y Notificación de Intentción de Declarar Propiedad Como Estorbo Publico (hereafter "Intent to Declare Property as Public Nuisance"), a certified translation of which is attached as Exhibit 1 hereto at pp. 1, 4.

provisions, define a public nuisance as: any abandoned structure or abandoned, uninhabited or empty lot that is in an inadequate condition to be inhabited or used by human beings, due to its state of ruin, lack of repair, construction flaws, or the fact that it is harmful to public health and safety, and such conditions may include, but are not limited to, defects in the structure, which increase the risk of fire or accident; lack of adequate ventilation and/or sanitary facilities; lack of electricity and/or potable water; and/or lack of cleanliness. See Exhibit 1 hereto at p. 1.

The Complaint and Notice of Intent to Declare Property a Public Nuisance determined that the property qualified to be declared a public nuisance based on the following grounds which were checked off in the Complaint and Notice of Intent to Declare Property a Public Nuisance document: Abandoned structure; Structure in inadequate condition to be inhabited; Harmful to health; Harmful to public safety; Lack of electricity; Lack of potable water; and Lack of cleanliness. See Exhibit 1 hereto at p. 1.

The Complaint and Notice of Intent to Declare Property a Public Nuisance gave the Plaintiff notice that the Immovable Property had been found to be an abandoned structure in bad condition and full of weeds and advised the Plaintiff that he had a period of twenty (20) calendar days, which shall begin to run on the date that this letter is mailed, to oppose the declaration of the Real Property as a public nuisance and to request an administrative hearing before an Examining Officer to be heard and to present to the Examining Officer the documentary, testimonial and expert evidence, that the Plaintiff deems convenient to present to the Examining Officer. See Exhibit 1 hereto at p. 2.

The Complaint and Notice of Intent to Declare Property a Public Nuisance gave the Plaintiff notice that he had a right to appear at the hearing before the Examining Officer, pro se

5

or represented by an attorney, with Plaintiff's objections in writing, and with the documentary, testimonial and/or expert evidence, that the Plaintiff deems convenient and necessary to present to the Examining Officer, and informed the Plaintiff of the procedures for filing an opposition to the Complaint and Notice of Intent to Declare Property a Public Nuisance and for requesting an administrative hearing before an Examining Officer. See Exhibit 1 hereto at pp. 2, 4. The Complaint and Notice of Intent to Declare Property a Public Nuisance gave the Plaintiff notice of the effects of the declaration of the property as a public nuisance. See Exhibit 1 hereto at pp. 2-3.

The Complaint and Notice of Intent to Declare Property a Public Nuisance advised the Plaintiff that if he did not oppose the declaration of the Real Property as a public nuisance and to request an administrative hearing within 20 calendar days, following the date that the Complaint and Notice of Intent to Declare Property a Public Nuisance was mailed, the Municipality of San Juan can declare the Real Property as a public nuisance without further hearing or summoning the Plaintiff, as provided for in Article 4.010 of the Municipal Code and Art. 15.203(e) of the Urban Planning Code. See Exhibit 1 hereto at pp. 2, 4.

On March 21, 2024, the Plaintiff responded to the Complaint and Notice of Intent to Declare Property a Public Nuisance by writing to Mayor Miguel Romero Lugo and opposing the Municipality's intent to declare his property and the structure located at #16 Calle Ponce in Hato Rey as a public nuisance. See Appendix, Exh. D-1, Plaintiff's March 21, 2024 letter to Mayor Romero Lugo (Docket 26-1) at pp. 1-4.

On April 5, 2024, an Order Setting Hearing ("Orden Señalando Vista") for May 23, 2024 was issued in Case number 22OP-58289QE-SJ in connection with Complaint and Notice of Intent to Declare Property a Public Nuisance by the Municipality's Office of Legal Affairs. See

6

April 5, 2024 Order Setting Hearing ("Orden Señalando Vista"), a certified translation of which is attached as Exhibit 2 hereto at pp. 1-3. The Plaintiff has acknowledged that he was served with the Order Setting Hearing on April 18, 2024 and admitted receiving notice that the Administrative Hearing was scheduled for May 23, 2024.[9]

The Plaintiff failed to attend the May 23, 2024 Hearing in Case number 22OP-58289QE-SJ regarding the Complaint and Notice of Intent to Declare Property a Public Nuisance by the Municipality's Office of Legal Affairs.[10] In the May 24, 2024 Order, the Plaintiff was ordered to show cause within 5 days for his non-appearance at the May 23, 2024 Hearing and the May 24, 2024 Order further gave the Plaintiff notice that if he did not appear in writing within the term given him it shall be concluded that the Plaintiff did not want the hearing to be held.[11]

The Plaintiff has acknowledged that he was served with the May 24, 2024 Order issued in Case number 22OP-58289QE-SJ.[12]  The Plaintiff failed to respond to the May 24, 2024 Order issued in Case number 22OP-58289QE-SJ within the five days granting him for doing so.

The Complaint which is not a model of clarity fails to state any actionable federal claims. It also fails to comply with the pleading requirements of Fed.R.Civ.P. 8 that a pleading stating a claim for relief must contain: "a short and plain statement of the grounds for the court's

---

[9] See Plaintiff's April 22, 2024 filing "Federal Original Jurisdiction; CoDefendant Fabrications And Manipulations Declare Them In Default (Docket No. 10) at p. 2, ¶¶ 5 and 6; and Plaintiff's June 10, 2024 filing "Part-2:Continued Fabrications And Manipulations; Codefendants Declare Themselves In Default (Docket No. 31) at p. 1, ¶ 2.d.

[10] See May 24, 2024 Order ("Orden"), issued by the Hearing Examiner Attorney Ricardo Robles Caraballo issued in Case number 22OP-58289QE-SJ, a certified translation of which is attached as Exhibit 3 hereto at p. 1.

[11] See May 24, 2024 Order issued in Case number 22OP-58289QE-SJ, attached as Exhibit 3 hereto at pp. 1-2.

[12] See Plaintiff's June 10, 2024 filing "Part-2:Continued Fabrications And Manipulations; Codefendants Declare Themselves In Default (Docket No. 31) at p. 3, ¶¶ 5.h-5.j.

jurisdiction, …", <u>See</u> Fed.R.Civ.P. 8(a)(1), and "a short and plain statement of the claim showing that the pleader is entitled to relief.; …", <u>See</u> Fed.R.Civ.P. 8(a)(2).

Various allegations raised in the Complaint are time barred by the one year statute of limitations governing actions brought under 42 U.S.C. § 1983 in this District.

"The Complaint fails the plausibility test spectacularly". <u>Redondo Waste Systems v. Lopez-Freytes</u>, 659 F.3d 136, 140 (1st Cir. 2011).[13] The allegations in the Complaint lack the factual specificity required under binding precedent. <u>Ashcroft v. Iqbal</u>. 129 S.Ct. 1937, 1951-52 (2009)("allegations do not satisfy the obligation of nudging plaintiff's discrimination [] claim[], across the line from conceivable to plausible" (quotations omitted)). The Complaint does not link either of the Appearing Defendants with actionable conduct and does not plead any specific non-conclusory facts establishing how any of the Appearing Defendants violated either the Fourth, Eighth or the Fourteenth Amendments. Conclusory statements in the Complaint are insufficient to adequately state a claim under current pleading standards.

Finally, the Complaint states no basis for the imposition of municipal liability. It does not plead a custom or practice or identify any actions of a policymaker which could provide a basis for municipal liability. Once the federal claims have been properly dismissed, the Court should decline from exercising supplemental jurisdiction.

Alternatively, the Court should strike the Complaint pursuant to Fed.R.Civ.P. 12(f) and/or require the plaintiff to file a more definite statement pursuant to Fed.R.Civ.P. 12(e).

---

[13] <u>Accord</u>, <u>McCurley v. Citigroup Global Markets Holdings Inc.</u>, 2023 WL 2652623, at *5 (D.P.R. March 27, 2023); and <u>Barnett v. Levin</u>, 2013 U.S. Dist. LEXIS 26205, at *4-5 (D.N.H. Feb. 25, 2013).

## II. LEGAL STANDARD

### a.    Rule 12(b)(1) Motion to Dismiss Standard

The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1). This rule is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction. Valentin v. Hospital Bella Vista, 254 F.3d 358, 362–363 (1st Cir. 2001).[14]

Under Rule 12(b)(1), a defendant may controvert the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. See Valentin, 254 F.3d at 363. Accord Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)("The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion. While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion, such as the one in this case. Heinrich v. Sweet, 44 F.Supp.2d 408, 412 (D.Mass. 1999); White v. Comm'r of Internal Revenue, 899 F.Supp. 767, 771 (D.Mass. 1995) ('The Court can look beyond the pleadings—to affidavits and depositions—in order to determine jurisdiction.')(citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1363 (1990))"); and Franklin California Tax-Free Trust v. Puerto Rico, 85 F.Supp.3d 577, 587 (D.P.R. 2015)("On a Rule 12(b)(1) motion, the Court may consider materials outside the pleadings to determine jurisdiction.")(citing Gonzalez, 284 F.3d at 288.)

---

[14] Accord AES Puerto Rico, L.P. v. Trujillo-Panisse, 133 F.Supp.3d 409, 415-416 n. 7 (D.P.R. 2015)(District court recognized that defendants' standing arguments called into question the court's subject-matter jurisdiction and where there is a threshold issue presented regarding subject matter jurisdiction, "'[a] federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims.'")(quoting Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006).

This type of challenge under Rule 12(b)(1), which the First Circuit has called a factual challenge "permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Valentin, 254 F.3d at 363 (citing Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997).[15]

"Because '[f]ederal courts are courts of limited jurisdiction,' the Court must 'begin by ensuring that [it has] jurisdiction to reach the questions presented.'" Laguer v. United States, 257 F.Supp.3d 198, 202 (D.P.R. 2017)(quoting Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016); and Fina Air Inc. v. United States, 555 F.Supp.2d 321, 323 (D.P.R. 2008)("This Court must construe federal jurisdiction narrowly."). Accord Fort v. Abzco, LLC, 470 F.Supp.3d 133, 136 (D.P.R. 2020)(District Court recognized when deciding a Rule 12(b)(1) motion that federal courts are courts of limited jurisdiction and the Court has the duty to construe its jurisdictional grants narrowly)(internal quotations and citations omitted); and Gonzalez v. Otero, 172 F.Supp.3d 477, 496 (D.P.R. 2016)(A plaintiff's choice of a federal forum is subject to careful scrutiny since federal courts are courts of limited jurisdiction. Thus, a District Court has the responsibility to police the border of federal jurisdiction and must rigorously enforce the jurisdictional limits standards that Congress chooses, they possess only that power authorized by

---

[15] Accord, ACCO Brands USA LLC v. Pineyro y Lara Comercial S.A., 27 F.Supp.3d 256, 258 (D.P.R. 2014) (where a Defendant's motion to dismiss under Rule 12(b)(1) challenges the factual accuracy—rather than the sufficiency—of plaintiffs' jurisdictional allegations, such a challenge permits the Court to engage in differential factfinding, under which the plaintiffs' jurisdictional averments are entitled to no presumptive weight. Rather, the Court must resolve the factual disputes between the parties in order to rule on the merits of the jurisdictional claim.)(internal quotations and citations omitted).

Constitution and statute, and therefore must be certain that they have explicit authority to decide a case.)(internal quotations and citations omitted).

> **b. Legal Standard for Fed.R.Civ.P. 12(b)(6) Motions to Dismiss for Failure to State a Claim**

A district court must examine a plaintiff's complaint to ascertain if it sets forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 at n.2 (1st Cir. 1996)(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). Courts, moreover, "'will not accept a complainant's unsupported conclusions or interpretations of law.'" Wash. Legal Found. v. Mass Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Accord, Torres-Landrau v. Roselló, 2022 WL 827131, at *3 (D.P.R. March 18, 2022); and Reyes v. Goya, 2009 U.S. Dist. LEXIS 59480 at p.*2 (D.P.R. July 9, 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1950.

"Factual allegations 'must be enough to raise a right to relief above the speculative level.'" Torres-Landrau, 2022 WL 827131, at *3 (quoting Twombly, 550 U.S. at 555), and a claim is found to be "plausible on its face if it 'raises a right to relief above the speculative level,'" Lopez-Mendez v. Lexmark Intern., 627 F.Supp.2d 66, 69 (D.P.R. 2009)(quoting, Twombly, 550 U.S. at 570). This means that a complaint contains "enough 'factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,…'" <u>Lopez-Mendez</u>, 627 F.Supp.2d at 69 (<u>quoting</u> Iqbal, 129 S.Ct. at 1949).

While the Rule 12(b)(6) standard obligates a district court to accept as true well-pleaded allegations in the complaint and to draw reasonable inferences in plaintiffs' favor, <u>See</u> <u>Medina v. Rodríguez</u>, 292 F.3d 31, 34 (1st Cir. 2002); <u>Correa v. Arrillaga</u>, 903 F.2d 49, 51 (1st Cir. 1990); and <u>Colon-Andino v. Toledo-Davila</u>, 2009 U.S. Dist. LEXIS 59929 at p.*17 (D.P.R. July 13, 2009), the 12(b)(6) standard does not permit a district court to "swallow the plaintiffs' invective hook, line, and sinker, bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996).[16]

A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. <u>López Santiago v. Med Centro, Inc.</u>, 2023 WL 8809479, at *1 (D.P.R. Dec. 20, 2023). Likewise, naked assertions devoid of further factual enhancement are insufficient to avoid dismissal. <u>Id.</u> Nor should a court "'accept as true a legal conclusion couched as a factual allegation,'" <u>Colon-Andino</u>, 2009 U.S. Dist. LEXIS 59929 at p.*18 (<u>quoting</u>, <u>Twombly</u>, 550 U.S. at 570). While a court must accept all well-pleaded facts as true and draw all reasonable inferences in a plaintiff's favor, <u>Parker v. Hurley</u>, 514 F.3d 87, 90 (1st Cir. 2008), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Iqbal</u>, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id</u>. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

---

[16] <u>Accord</u>, <u>Massachusetts  School of Law at Andover v. ABA</u>, 142 F.3d 26, 40 (1st Cir. 1998); <u>Doyle v. Hasbro</u>, 103 F.3d 186, 190 (1st Cir. 1996); and <u>Colon-Andino</u>, 2009 U.S. Dist. LEXIS 59929 at p.*17.

the complaint has alleged —but it has not show[n]'— 'that the pleader is entitled to relief.'" <u>Iqbal</u>, 129 S.Ct. at 1950 (<u>quoting</u> Fed.R.Civ.P.8(a)(2)). And "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u>, 129 S.Ct. at 1949 (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 557).

The Supreme Court has found that "[b]ecause vicarious liability is inapplicable to […] § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 129 S.Ct. at 1948. Thus, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Id.</u>, 129 S.Ct. at 1949.

### III. Argument

### A.. Various factual allegations Asserting Plaintiff's Claims Against the Appearing Defendants are Time-Barred Under the Governing One Year Statute of Limitations

Plaintiff has asserted claims which are allegedly actionable under 42 U.S.C. §1983 ("§1983").[17]  Since §1983 lacks an accompanying federal statute of limitation, courts adopt relevant provisions from the analogous statute of limitations of the forum state[18], here Puerto

---

[17] <u>See</u> Cpt. at pp. 5, 12-14.

[18] <u>See</u> <u>Martínez-Rivera v. Commonwealth of Puerto Rico</u>, 812 F.3d 69, 74 (1st Cir.  2016)("Because section 1983 does not have its own statute of limitations (*i.e.*, a provision intended to protect defendants from having to defend against stale claims), courts use the personal-injury limitations period adopted by the state where the injury supposedly occurred—in Puerto Rico, one year." (<u>citing</u> <u>Morris v. Gov't Dev. Bank of P.R.</u>, 27 F.3d 746, 748 (1st Cir. 1994); and <u>González García v. PREPA</u>, 214 F.Supp.2d 194, 199-200 (D.P.R. 2002), <u>citing</u>, <u>Wilson v. Garcia,</u> 471 U.S. 261, 266-280 (1985) (directing federal courts in <u>section 1983</u> actions to borrow and apply a state's statute of limitations for personal injury cases).

Rico.  The U.S. Supreme Court has held that for §1983 actions, the most appropriate analogous provision is the statute of limitations for personal injury cases.[19]

While the limitations period is determined by state law, the date of accrual is a federal law question.[20] This Court has found that for §1983 actions, the "one-year statute of limitations 'begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury.'" See Gonzalez García, 214 F.Supp.2d at  200, quoting, Benitez-Pons v. Com. of  P.R., 136 F.3d 54, 59 (1st Cir.1998) (internal citations omitted).

The April 3, 2024 Complaint (Docket No. 1) at pp. 2, 3; and the Appendix to the Complaint Docket No. 1-1 at pp. 2- 7, 9, 11-16, 21, 29-31, 33, 35),[21] alleges factual matters occurring in the years 2003, 2005, 2008, 2011, 2013, 2014, 2017, 2018, 2019, 2020 and 2022. As to any factual allegation raised in the Complaint which occurred prior to April 3, 2023, the Plaintiff is time-barred from seeking relief based on such allegations. In the Complaint, Plaintiff has pled no factual allegations occurring from April 3, 2023 to the present which could state a claim against either of the Appearing Defendants.

---

[19] See González García, 214 F.Supp.2d at  200, citing, Owens v. Okure, 488 U.S. 235, 236 (1989) (directing federal courts in §1983 actions to borrow and apply a state's statute of limitations for personal injury cases). Accord, Marrero-Colon v. PREPA, 2007 WL 9712394, at *2 n. 4 (D.P.R. Oct. 30, 2007). The First Circuit had held that in §1983 actions arising in this forum, such as the plaintiff's herein, the one year statute of limitations governing personal injury actions codified at 31 L.P.R.A. § 5298(2) would be the governing period. See González García, 214 F.Supp.2d at 200, citing, Rivera-Ramos v. Roman, 156 F.3d 276, 282 (1st Cir. 1998). Under the new Puerto Rico Civil Code of 2020, the one-year statute of limitations for personal injury claims is now located at Article 1204 of Puerto Rico Civil Code of 2020, which is codified at 31 L.P.R.A. § 9496. See Rodríguez v. De Jesús-Rojas, 2023 WL 7878853, at *2 (D.P.R. Nov. 16, 2023).

[20] See González García, 214 F.Supp.2d at  200, citing, Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997) (per curiam). Accord, Marrero-Colon, 2007 WL 9712394, at *2.

[21] This statement is being made without waiving the Appearing Defendants' position that Exhibits D-1 and D-6 are the only part of the Appendix properly before the Court since the Plaintiff has not submitted certified translations of any of the remainder of the Appendix.

**C. The Plaintiff Fails to Show That This Court Has Subject Matter Jurisdiction and States Viable Federal Claims Against the Appearing Defendants**

**1. Federal Courts are Courts of Limited Jurisdiction**

A threshold issue is this Court's jurisdiction to entertain this action based on the bedrock principle of federalism that federal courts are courts of limited jurisdiction. As noted by the late Professor Wright in his leading treatise on federal civil procedure.

> It is a principle of first importance that the federal courts are courts of limited jurisdiction. Most state courts are courts of general jurisdiction, and the presumption is that they have subject matter jurisdiction over a particular controversy unless a showing is made to the contrary. The federal courts, on the other hand, cannot be courts of general jurisdiction. They are empowered to hear only those cases that (1) are within the judicial power of the United States, as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress.

> Because of their unusual nature, and because it would not simply be wrong but indeed would be an unconstitutional invasion of the powers reserved to the states if the federal courts were to entertain cases not within their jurisdiction, **the rule is well settled that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of that court. The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists.** Thus the facts showing the existence of jurisdiction must be affirmatively alleged in the complaint. If these facts are challenged, the burden is on the party claiming jurisdiction to demonstrate that the court has jurisdiction over the subject matter.

See, Wright, Miller & Cooper, Federal Practice and Procedure, § 3522 "Courts of Limited Jurisdiction" (2005) (emphasis supplied internal footnotes omitted); and Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 15 (1st Cir. 2004)("'Federal courts are courts of limited jurisdiction,

and therefore must be certain that they have explicit authority to decide a case.'"), quoting, Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2001).[22]

### 2. The Plaintiff Bears the Burden of Proof of Establishing Federal Jurisdiction Against the Appearing Defendants

The Plaintiff as the party invoking federal jurisdiction bears the burden of proof of establishing the existence of federal jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, … which is not to be expanded by judicial decree, … **It is to be presumed that a cause lies outside this limited jurisdiction, …, and the burden of establishing the contrary rests upon the party asserting jurisdiction**,…")(internal citations omitted and emphasis supplied); Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005)("The existence of subject-matter jurisdiction 'is never presumed.' …. Rather, federal courts, including appellate courts, must satisfy themselves that subject-matter jurisdiction has been established."); Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 904 (1st Cir. 1980) ("The burden of proving the facts necessary to sustain jurisdiction is on the

---

[22] Accord, Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998) ("Federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but, rather, must appraise their own authority to hear and determine particular cases."); Francis v. Goodman,  81 F.3d 5, 8 (1st Cir. 1996) ("[F]ederal courts are not at liberty to overlook limitations on their subject matter jurisdiction."); Rivera Sanchez v. MARS, Inc., 30 F.Supp.2d 187, 190 (D.P.R. 1998) ("Federal courts are courts of limited jurisdiction. U.S. Const. art. III cl. 2."); and Nadal v. Puerto Rico Tourist Development Co., 399 F.Supp. 1222, 1223 (D.P.R. 1975) ("Federal district courts have been created by Congress pursuant to Article II, Section 1 of the Federal Constitution. They are courts of original but limited jurisdiction and are empowered to hear only such cases as are within the judicial power of the United States and have been entrusted to them through a jurisdictional grant of Congress. It is settled law that the judicial power of the United States having been defined by Article III, Section 2 of the Constitution, Federal courts can not be given authority beyond that which the Constitution has thereby conferred.").

plaintiff."); and <u>Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.</u>, 951 F.Supp. 1028, 1030 (D.P.R. 1996)("[P]laintiffs bear the burden of proof on the issue of jurisdiction.").

### 3. The Complaint lacks factual specificity as to the conduct of each defendant.

The First Circuit has stressed when affirming a Judgment dismissing a §1983 complaint, that in order for the Court to draw a reasonable inference that a defendant is liable for the misconduct alleged, "[t]he complaint must allege facts linking each defendant to the grounds on which that particular defendant is potentially liable." <u>Redondo Waste v. Lopez Freytes</u>, 659 F.3d 136, 140 (1st Cir. 2011). Because the Complaint fails to do so against any of the Appearing Defendants, this Court must dismiss the Complaint against them.

### a. The Complaint fails to adequately plead a Fourth Amendment Claim.

The Supreme Court has stated that the Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion,…". <u>Katz v. United States</u> 389 U.S. 347, 350 (1967). Specifically, the highest federal court has emphasized that "the Fourth Amendment protects people, not places." <u>Id.</u>, 389 U.S. at 351. The protection that the Fourth Amendment affords to people is activated when two critical conditions are met, first, the person must have an "actual (subjective) expectation of privacy …" and, second, that "the expectation be one that society is prepared to recognize as 'reasonable'." <u>Id.</u>, 389 U.S. at 361 (Harlan concurring). In the case at bar, the Plaintiff has not stated any facts that reveal that a search or a seizure was ever effectuated by any of the Appearing Defendants. By the same token, the Plaintiff has not even alleged what he had an actual subjective expectation of privacy in, much less that what he had an

expectation of preserving as private is constitutionally protected as an expectation that society properly recognizes as reasonable.

The Plaintiff has not stated a valid claim under the Fourth Amendment against any of the Appearing Defendants arising out of the factual allegations in the Complaint. The only paragraphs of the Complaint where the Fourth Amendment is even mentioned are pp. 2, 5, 10, 15-17 and 19. Plaintiff states in purely conclusory terms that his rights guaranteed by the Fourth Amendment were violated, yet the Complaint does not even state the basic facts necessary for the constitution of a violation of such nature by any of the Appearing Defendants. As to the references to alleged Fourth Amendment violations on pp. 2, 5 (¶ 3.0.1), 10 (¶4.5),[23] and p. 17 (¶7.3),[24] none of the Appearing Defendants are even mentioned in any of those paragraphs of the Complaint on those pages where the Fourth Amendment is mentioned.

While the Fourth Amendment protects individuals from unreasonable searches and seizures, neither the Complaint nor the two documents in the Appendix for which a certified translation has been provided, Exhibits D-1 and D-6, contain any reference to any alleged unconstitutional "search" anywhere in their four corners. Cpt. (Dkt.1) at pp. 1-20, Exh. D-1 (Dkt. 25-1) at pp. 1-6, and Exh. D- (Dkt. 26-1) at pp. 1-5. Nor does the Complaint allege that either of the Appearing Defendants effectuated an illegal seizure.  The Complaint alleges only that there was an "**attempted** unwarranted seizure of our property; …" Cpt. at p. 2 (emphasis supplied).

---

[23] This 4th Amendment claim is specifically directed to Defendant Reinaldo Paniagua, not to the Appearing Defendants.

[24] This 4th Amendment claim is specifically directed to Defendant Reinaldo Paniagua, not to the Appearing Defendants.

Claims regarding an alleged attempted, but not completed, seizure are not actionable under the Fourth Amendment and this Court has no subject matter jurisdiction to entertain such a claim.

The U.S. Supreme Court has recognized that the justiciability of a particular claim of a plaintiff may be challenged on the ground of the lack of ripeness. <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984); and <u>Poe v. Ullman</u>, 367 U.S. 497, 508 (1961). Article III of the U.S. Constitution decisively limits the jurisdiction of this Court to justiciable cases; those in which there is an actual live "case or controversy" for which judicial adjudication is possible on behalf of a particular party who seeks to invoke federal jurisdiction. <u>See</u> U.S. Const. art. III, <u>§ 2, cl. 1</u>; and <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975) ("This is the threshold question in every federal case, determining the power of the court to entertain the suit"). The justiciability of a particular claim may be challenged, among other grounds, on the lack of ripeness or the mootness of the claim, or the lack of standing of any of the litigants. <u>Allen</u>, 468 U.S. at 750 (1984); and <u>Poe v. Ullman</u>, 367 U.S. 497, 503-504 (1961). Plaintiff has the burden to establish ripeness. Because ripeness is a justiciability doctrine that is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, the plaintiff bears the burden of establishing that each claim is ripe for adjudication. <u>Garcia v. Acosta</u>, 393 F.Supp.3d 93, 103 (D.D.C. 2019)(internal citations and quotation marks omitted). <u>Accord</u> <u>Reddy v. Foster</u>, 845 F.3d 493, 500–501 (1st Cir. 2017).[25]

---

[25] <u>Reddy</u>, 845 F.3d at 500–501 ("Ripeness, another aspect of justiciability, has roots in both the Article III case or controversy requirement and in prudential considerations. … Much as standing doctrine seeks to keep federal courts out of disputes involving conjectural or hypothetical injuries, the Supreme Court has reinforced that ripeness doctrine seeks to prevent the adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all. … "[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of" the judicial relief sought. … Insofar as ripeness is rooted in Article III, we must consider

The Complaint fails to state a Fourth Amendment claim which is ripe for adjudication when no allegedly improper seizure has taken place yet. <u>Zerahzhe Authentic Tate v. Jackson</u>, 2024 WL 2821968, at *2 (W.D.Ark. May 13, 2024)("Plaintiff's Fourth Amendment claims of improper search and seizure and "entrapment" against Defendants regarding his August 11, 2023, arrest are not yet ripe for consideration by this Court. Plaintiff's state criminal charges—resulting from the August 2023 arrest—are still pending before the Washington County Circuit Court."); <u>Shanko v. Lake Cnty.</u>, 116 F.Supp.3d 1055, 1061-1062 (N.D.Cal. 2015)("As the destruction has not yet occurred, any Fourth Amendment claim for damages premised upon an unlawful seizure is not yet ripe."); <u>Bendorf v. Ojai Basin Groundwater Management Agency</u>, 2012 WL 3867352, at *7 (C.D.Cal. July 16, 2012)("Plaintiffs assert a search and seizure claim based on the Ordinance granting defendants a right to traverse plaintiffs' property without permission. … The Fourth Amendment covers only searches and seizures that have actually taken place, not threatened or attempted searches and seizures. *See Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 843–44, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (attempted seizure is not covered by the Fourth Amendment). Plaintiffs have not alleged any set of facts from which the court can infer that defendants or their designees have actually entered plaintiffs' property. This claim is therefore unripe."); <u>Association of American Physicians & Surgeons, Inc. v. U.S. Dept. Of Health and Human Services</u>, 224 F.Supp.2d 1115, 1123–1125 (S.D.Tex. 2002)(district court concluded that plaintiffs' pre-enforcement Fourth Amendment claims we*re* premature and not

---

it as part of our assessment of whether we have jurisdiction 501 to hear the lawsuit. … The plaintiffs bear the burden of alleging facts sufficient to demonstrate ripeness.")(internal citations and quotations marks omitted).

ripe for judicial review rejecting plaintiff's argument that the Privacy Rule authorizes mandatory

unwarranted disclosures to government entities. "Because these 'unwarranted disclosures' have

not yet occurred and plaintiffs have suffered no actual injury, the court concludes that plaintiffs

lack standing to pursue this claim, and the claim is not ripe for review.");[26] and Kerr v. Kimmell,

740 F.Supp. 1525, 1530–1531 (D.Kan. 1990).[27] Accord California v. Hodari D., 499 U.S. 621,

626–627n.2, 111 S. Ct. 1547, 1550–1551, 113 L. Ed. 2d 690 (1991).

The Fourth Amendment claim must be dismissed against the Appearing Defendants for

failure to state a justiciable claim.

### b. The Complaint fails to state a Fifth Amendment Takings Claim

The Fifth Amendment's Taking Clause prohibits the government from taking private

property for public use without just compensation. River Valley Heights Corp v. West Amwell,

2023 WL 1433634, at *2 (3rd Cir.  Feb. 1, 2023). While the paradigmatic taking requiring just

---

[26] See also Adams v. Blue Island Animal Control Officer, 2002 WL 31748614, at *1–2 (N.D.Ill. Dec. 3, 2002) ("While plaintiff does not specifically allege Fourth Amendment violations in his complaint, we read his complaint liberally to say that his rights were violated when his property was searched and seized. Even so, plaintiff cannot state a constitutional injury arising from defendants' conduct. He does not allege that he was wrongfully convicted of any charges or that any evidence was used against him improperly, and cannot state a Fourth Amendment claim. See Heck v. Humphrey, 512 U.S. 477, 487 n. 7, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Because plaintiff has not pursued his state remedies his claim is not ripe.").

[27] Kerr, 740 F.Supp. at 1530–1531 (D.Kan. 1990) ("Plaintiff contends that this provision of the Act is unconstitutional because she alleges that it allows the commissioner to seize animals 'without warrant, without judicial review, and without probable cause.' On the uncontested facts before the court, the court finds that it cannot address the merits of plaintiff's claim because no case or controversy concerning the seizure procedure exists. Upon inspection, Kerr's facility was found to be excellent, and the 1531 animals therein were not found to be endangered. To date, the commissioner has not attempted to seize any of plaintiff's animals, nor is such a seizure presently foreseeable. To reach the merits of plaintiff's constitutional argument on these facts would be tantamount to issuing an advisory opinion, which this court is not empowered to do. U.S. Const. art. III. Otherwise stated, this question is simply not ripe for decision at this time. See Socialist Labor Party v. Gilligan, 406 U.S. 583, 588–89, 92 S.Ct. 1716, 1719–20, 32 L.Ed.2d 317 (1972) (stating that even when jurisdiction exists 'it should not be exercised unless the case "tenders the underlying constitutional issues in clean-cut and concrete form."') (citation omitted). Therefore, plaintiff's fourth amendment claim must be dismissed.")

compensation is a direct government appropriation or physical invasion of private property, government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster and such regulatory takings may be compensable under the Fifth Amendment." River Valley Heights, 2023 WL 1433634, at *2 (citing Lingle v. Chevron U.S.A., 544 U.S. 528, 537 (U.S. 2005). If by the use of attempted seizure in the Complaint, Cpt. at p. 2, the Plaintiff is trying to allege a regulatory taking,  such claim is not ripe.

In Williamson County Regional Planning Comm. v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985)· the Supreme Court held that a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue. River Valley Heights, 2023 WL 1433634, at *2 (citing Williamson County, 473 U.S. at 186). While the Supreme Court in Knick v. Township of Scott, Pennsylvania, 588 U.S. 180, 187-190 (2019) partially overruled Williamson County, the Knick Court expressly said the finality requirement was not "at issue" there, Id. And since Knick, the Court has reaffirmed the validity of the finality requirement. River Valley Heights, 2023 WL 1433634, at *2 (citing Pakdel v. City and Cnty. of San Francisco 594 U.S. 474, 475 (U.S. 2021) ("When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision. … After all, until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation.")(internal citations omitted). Accord Haney, Trustee of Gooseberry Island Trust v. Town of Mashpee, 70 F.4th 12, 19 (1st Cir. 2023).

Since the Complaint does not allege that the municipal government has reached a final decision regarding any alleged regulatory taking, this federal court has no subject matter jurisdiction and may not consider the Plaintiff's Fifth Amendment claim before the government has reached a final decision. Any Fifth Amendment taking claim must be dismissed as unripe.

### c. The Complaint fails to adequately plead an Eight Amendment Claim.

The Eighth Amendment prohibits certain kinds of punishment: excessive bail, excessive fines and cruel and unusual punishments. <u>See</u> U.S. CONST. amend. VIII. Under the Eighth Amendment, "'[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' Taken together, these Clauses place 'parallel limitations' on "the power of those entrusted with the criminal-law function of government." <u>Timbs v. Indiana</u>, 586 U.S. 146, 151 (U.S. 2019)(<u>citing</u> <u>Browning-Ferris v. Kelco Disposal</u>, 492 U.S. 257, 263 (1989).

These prohibitions were intended to protect person convicted of crimes from government abuses of power. <u>See</u>, <u>Ingraham v. Wright</u>, 430 U.S. 651, 666 (1977).  "The Eighth Amendment guarantees the right to be free from excessively harsh punishment at the hands of the government." <u>Fourteenth Amendment — Due Process Clause — Incorporation Doctrine — Timbs v. Indiana</u>, 133 Harvard Law Review 342 (2019). To be actionable under the 8th Amendment  excessive fines clause, the government's purpose must be "in part to punish". <u>Austin v. U.</u>S., 509 U.S. 602, 610 (1993). A core requirement of the Excessive Fines Clause from its historic lineage is that a fine "'not be so large as to deprive [an offender] of his livelihood.'" <u>Timbs</u>, 586 U.S. at 151; and 133 Harvard Law Review at 347. Under Supreme

23

Court precedent, a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense. U.S. v. Blackman, 746 F.3d 137, 144 (4th Cir. 2014)(citing United States v. Bajakajian, 524 U.S. 321, 334 (1998).

Since a ripe controversy is a necessary component of subject matter jurisdiction, to prevent federal courts from making premature or speculative decisions, challenges under the Excessive Fines Clause are not ripe before a final order or judgment imposing such fine has been entered. See Schanzle v. Haberman, 831 Fed.Appx. 103, 108 (5th Cir. 2020); Blackman, 746 F.3d at 144; U.S. v. Covey, 232 F.3d 641, 646 (8th Cir. 2000); and Cheffer v. Reno, 55 F.3d 1517, 1523–1524 (11th Cir. 1995).

This Court has no subject matter jurisdiction since the Complaint does not state a ripe claim of an excessive fine since the Complaint fails to allege any fine imposed on the Plaintiff which is not time-barred. The only fine which is pled in the Complaint is what the Plaintiff alleges was "an unwarranted fine of $2000" imposed in 2003, Cpt. at p. 2, more than two decades ago. Assuming only arguendo, the 8th Amendment excessive fines clause could be implicated by such fine, such claim has long since been time-barred under the one year statute of limitations governing §1983 claims in this jurisdiction. Nor is there any claim that the Appearing Defendants were around in 2003 when such fine was imposed or had anything to do with it. There is no other fine alleged in the Complaint which could state a ripe claim under the 8th Amendment excessive fines clause. Cpt. at pp. 1-20.

24

Plaintiff has not pled any of the elements of a claim of an 8th Amendment excessive fines clause violation as to Appearing Defendants. The Complaint does not plead that either of the Appearing Defendants are individuals "entrusted with the criminal-law function of government." Timbs, 586 U.S. at 151; that Appearing Defendants did an excessive fine to punish him. Austin, 509 U.S. at 610; that any unspecified fine constituted excessively harsh punishment and could be considered an abuse of power. Ingraham, 430 U.S. at 666; and 133 Harvard Law Review at 342; and/or that any fine unspecified in the Complaint was grossly disproportional to the gravity of a defendant's offense, or so large as to deprive Plaintiff of his livelihood. Timbs, 586 U.S. at 151; Bajakajian, 524 U.S. at 334; Blackman, 746 F.3d at 144; and 133 Harvard Law Review at 347.

The 8th Amendment claim must be dismissed for failure to state a claim.

### d. The Complaint fails to adequately plead a Fourteenth Amendment Equal Protection Claim.

The Plaintiff has not stated a valid claim under the Fourteenth Amendment against either of the Appearing Defendants arising out of the allegations in the Complaint. The only paragraphs of the Complaint containing any factual allegations where the Fourteenth Amendment or equal protection is even mentioned are in the Complaint at pp. 1-2, 5, 7, 9-12, 14-18. Plaintiff states in purely conclusory terms that his alleged rights guaranteed by the Fourteenth Amendment were violated, yet the Complaint does not even state the basic facts necessary for the constitution of a violation of such nature by any of the Appearing Defendants.

Courts have found where like here a plaintiff seems to be making a Fourteenth Amendment equal protection claim based on a regulatory taking argument, for the same reason the Fifth Amendment takings claim is not ripe, See § 3.c. above, the Fourteenth Amendment

25

equal protection claim is not ripe either. <u>Anderson v. Alpine City</u>, 804 F.Supp. 269, 275–276 (D.Utah 1992)(<u>citing</u> <u>Rocky Mountain Materials & Asphalt, Inc.</u>, 972 F.2d 309, 311 (10th Cir. 1992)); and <u>Downing/Salt Pond Partners, L.P. v. Rhode Island</u>, 698 F.Supp.2d 278, 288–289 (D.R.I. 2010).

Assuming only arguendo, the equal protection claim is not dismissed for ripeness, it would fail on its merits as well. The only constitutional right protected under the Fourteenth Amendment claimed in the Complaint is an allegation of a violation of the Plaintiff's equal protection rights.[28] The phrase "equal protection" is mentioned only in the following places in the Complaint, on the right side of the Complaint's caption on p.1, a conclusory assertion on p. 2 that certain unspecified practices and polices constitute a flagrant violation of Plaintiff's Civil Rights guaranteed by the U.S. Constitution "particularly the Equal Protection of the Law", a wholly conclusory allegation of Bogus Public Nuisance and Abuse of Power by Appearing Defendant Vanessa Jiménez Cuevas was allegedly in deprivation of the Equal Protection of the Law for following provisions of the Municipal Code of Puerto Rico and the Municipality's

---

[28] Although the Plaintiff does not plead a procedural due process claim in the Complaint, to the extent it could be read as trying  to articulate one, it would not be ripe either for the same reasons. <u>Rocky Mountain Materials.</u>, 972 F.2d at 311 ("When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, we have required the plaintiff to utilize the remedies applicable to the takings claim."). The Plaintiff would not be able to state a procedural due process claim on the merits either in light of the procedural protections offered him in the public nuisance context, including both a written opposition and the right to be represented by legal counsel and participate in an evidentiary hearing with presentation of both documentary and testimonial evidence which the Plaintiff has decided for apparent tactical reasons not to avail himself of. <u>See</u> Exhibit 1, Complaint and Notice of Intent to Declare Property a Public Nuisance at pp. 1-4; Exhibit 2, April 5, 2024 Order Setting Hearing at pp. 1-3, and Exhibit 3, May 24, 2024 Order. If the government has in place procedures that provide adequate process and a plaintiff fails to utilize those procedures, there is no constitutional violation. <u>Kremer v. Chem. Constr. Co.</u>, 456 U.S. 461, 485, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (holding that a plaintiff's failure "to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy"); <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir.2000) ("[A] plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. ... If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").

Urban Code, See Exhibit 1 hereto, in the Cpt. at pp. 7, 9 and 16, without specifying the elements of an equal protection claim or pleading any facts applying such elements as to when or how Jiménez Cuevas violated his equal protection rights, a wholly conclusory allegation of Bogus Public Nuisance and Abuse of Power by Appearing Defendant Mayor Romero was allegedly in deprivation of the Equal Protection of the Law for following provisions of the Municipal Code of Puerto Rico and the Municipality's Urban Code and trying to reduce public nuisances within the Municipality, See Exhibit 1 hereto, in the Cpt. at pp. 9, 15-16, without specifying the elements of an equal protection claim or pleading any facts applying such elements as to when or how Mayor Romero violated Plaintiff's equal protection rights, various references to equal protection within citations of legal precedent, the Willowbrook and Logan cases on pp. 11-12, 14, without a scintilla of analysis as to what these cases have to do with the Appearing Defendants, and a reference to a conclusory allegation that defendant Paniagua violated Plaintiff's equal protection right, Cpt. at p. 10, which by the terms of such pleading does not apply to the Appearing Defendants.

The Fourteenth Amendment grants all citizens equal protection of the laws. Puerto Rico is subject to the equal protection clause. Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico, 478 US 328, 331 (1986). Equal protection claims are predicated on the unfair application of a statute, regulation or any other sort of government regulatory action to a protected group of citizens. The challenged State action shall be reviewed under strict scrutiny when a fundamental right of the protected group is affected and under rational scrutiny when no fundamental rights are involved. Mills v. Habluetzel, 456 US 91, 102 (1982).

27

In order to prevail on an equal protection claim the plaintiff must establish that the challenged action or regulation is driven by "*an element of purposeful or intentional discrimination*". <u>Snowden v. Hughes</u>, 321 U.S. 1, 64 (1944)(emphasis added). There are no specific facts pled in any of the allegations of the Complaint referenced above that the Municipality of San Juan or the Appearing Defendants Mayor Romero and/or Legal Director Jiménez and/or any official, employee or agent of the Municipality took any action against the Plaintiff motivated by any element of purposeful or intentional discrimination. This by itself should be enough to dismiss any alleged equal protection claim of the Plaintiff under the Fourteenth Amendment.

Furthermore, the Complaint fails to even plead, let alone establish that: 1) Plaintiff belongs to a protected group; 2) the group is being affected by the application of a government regulatory action; and 3) the challenged action entails an intentional discriminatory animus. In other words, **ALL** of the elements of an equal protection claim are absent in the Complaint and any equal protection claim of Plaintiff must be dismissed with prejudice.

Post-<u>Iqbal</u>, it is clear that the principle a court must accept as true all of the allegations contained in a Complaint does not apply to legal conclusions and that "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S.Ct. at 1949. The Plaintiff's allegations merely mouth the words equal protection without pleading any facts sufficient to state a claim that any of the Appearing Defendants has violated the Plaintiff's equal protection rights. <u>Id</u>. As to the Appearing Defendants, it is clear from the ¶¶''s cited above that no viable equal protection claim is stated in the Complaint.

### e.      No basis Has Been pled for the Imposition of Municipal Liability

The Municipality of San Juan[29] avers that the Plaintiff will be unable to meet his burden

of establishing any action in violation of Plaintiff's rights by a municipal officer, whose actions

could be binding upon the Municipality. In <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658,

689-690 (1978), the Supreme Court recognized that municipalities and other local governmental

bodies are "persons" within the meaning of 42 U.S.C. § 1983 who may be subject to suit. <u>Jinks v.</u>

<u>Richland County</u>, 538 U.S. 456, 466 (2003); and <u>Board of County Commissioners v. Brown</u>, 520

U.S. 397, 403 (1997). However, a municipality may not be held vicariously liable under § 1983

for the torts of an employee "'solely on the basis of the existence of an employer-employee

---

[29] The Complaint here does not explicitly sue the Municipality of San Juan as a defendant, and it is not clear from the allegations of the Complaint whether the Plaintiff intended to sue Defendant Mayor Romero or Defendant Jiménez solely in their personal capacity or in their official capacity as well. A suit against a defendant in his official capacity represents another way of pleading an action against an entity of which that defendant is an agent or officer. <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 (1985). As the Supreme Court has recognized, "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989), <u>citing</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985).<u>Accord,</u> <u>Andino-Pastrana v. Municipio de San Juan</u>, 215 F.3d 179, 180 (1st Cir. 2000)("Plaintiff also named as defendants the Municipality itself and Mayor Sila Maria Calderon, who was in office at all relevant times. But because plaintiff sued the individual defendants in their official capacities only,  the suit was and is for all practical purposes solely against the Municipality."), <u>citing</u>, <u>Will</u>, 491 U.S. at 71; and <u>Gonzalez-Caratini v. Garcia-Padilla</u>, 278 F.Supp.2d 189, (D.P.R. )("A suit against a mayor in his official capacity 'is for all practical purposes solely against the Municipality.' …'If there is a judgment against [the mayor] in his official capacity, it runs against [the municipality] itself.'")(internal citations omitted).  The Municipality is specially appearing here without conceding the jurisdiction of the Court or that the Complaint is sufficient to bring in the Municipality as a party, and without waiving the right to argue why it is not sufficient.  To the extent the Complaint could be read to bring in San Juan as a party, municipal governments are immune from punitive damages in the context of §1983 claims.  <u>City of Newport v. Fact Concerts, Inc.</u>, 453 US 247, 271 (1981); <u>Lamboy-Ortiz v. Ortiz-Velez</u>, 630 F.3d 228, 233-234, n. 7 (1st Cir. 2010) ("The district court ruled, correctly, that punitive damages are unavailable against a municipality in section 1983 suits.")(internal citation omitted); <u>Chestnut v. City of Lowell</u>, 305 F.3d 18, 21 (1st Cir. 2002); <u>Colon Acosta v. Hernandez Torres</u>, 219 F.Supp.2d 196, 201 (D.P.R. 2002); and <u>Acevedo Garcia v. Vera Monroig</u>, 170 F.Supp.2d 165, 166-167 (D.P.R. 2001). Because suits against municipal officials in their official capacity are actually suits against the Municipality itself, punitive damages may not be awarded against Defendants in their official capacity.  <u>Andino-Pastrana</u>, 215 F.3d at 180.

relationship with a tortfeasor.'" <u>Board of County Commissioners</u>, 520 U.S. at 403, <u>quoting</u>,

<u>Monell</u>, 436 U.S. at 692; and <u>Silva v. Worden</u>, 130 F.3d 26, 31 (1st Cir. 1997).

There is no respondeat superior liability for a municipality under §1983. <u>Board of County</u>

<u>Commissioners</u>, 520 U.S. at 403 ("We have consistently refused to hold municipalities liable

under a theory of *respondeat superior*.") (internal citations omitted); <u>City of Canton v. Harris</u>,

489 U.S. 378, 392 (1989); <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 121-122 (1988)(the

<u>Monell</u> Court "rejected the use of the doctrine of respondeat superior and concluded that

municipalities could be held liable only when an injury was inflicted by a government's

'lawmaker or by those whose edicts or acts may fairly be said to represent official policy.'"),

<u>quoting</u>, <u>Monell</u>, 436 U.S. at 694; <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 478 (1986); <u>Baron v.</u>

<u>Suffolk Cty. Sheriff's Dept.</u>, 402 F.3d 225, 236, 240 (1st Cir. 2005); and <u>Bowen v. Manchester</u>,

966 F.2d 13, 18 (1st Cir. 1992)("A municipality, however, cannot be held liable under Section

1983 on the basis of a respondeat superior theory 'for such liability would violate the evident

congressional intent to preclude municipal liability in cases in which the city itself was not at

fault.'"), <u>quoting</u>, <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 828 (1985)(Brennan, J., concurring in

part, and in judgment).

A settled principle of municipal liability under §1983 is that for a municipality to be held

liable for acts taken pursuant to a policy, "only those municipal officials who have 'final

policymaking authority' may by their actions subject the government to 1983 liability."

<u>Praprotnik</u>, 485 U.S. at 123, <u>quoting</u>, <u>Pembaur</u>, 475 U.S. at 483. <u>Accord</u>, <u>McMillian v. Monroe</u>

<u>Cty.</u>, 520 U.S. 781, 784-785 (1997)(In determining whether a local government is liable under §

1983 for its policies that are alleged to have caused constitutional torts, "A court's task is to

'identify those officials or governmental bodies who speak with <u>final policymaking authority</u> for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'")(emphasis in original), <u>quoting</u>, <u>Jett v. Dallas Ind. School Dist.</u>, 491 U.S. 701, 737 (1989). Municipal liability may be found in such instances only where the "'decision maker possesses final authority to establish municipal policy with respect to the action ordered.'" <u>Silva</u>, 130 F.3d at 31(<u>quoting</u>, <u>Pembaur</u>, 475 U.S. at 4810. <u>Accord</u> <u>Baron</u>, 402 F.3d at 241; and <u>Rivera v. De Jesus</u>, 873 F.2d 447, 450 (1st Cir. 1989)(plaintiffs must show that the discriminatory acts were "done by persons with 'final authority' to establish [the [defendant's]] policy with respect to the action ordered,'")(<u>quoting</u>, <u>Pembaur</u>, 475 U.S. at 481).

It is hornbook law that the limited circumstances under which a municipality could be held liable are those involving the infringement of a federal right as a result of a municipal "policy" or "custom". In <u>Board of County Commissioners</u>, 117 S. Ct. 1382 (1997), the U.S. Supreme Court made the municipal liability standard more rigorous and stringent. Now, a plaintiff suing a municipality like San Juan under § 1983 must show more than causality between the alleged infringement of civil rights and a municipal policy or custom. In <u>Board of County Commissioners</u>, the Supreme Court stated: "...[A] policy giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." 117 S. Ct. at 1385 (our emphasis). <u>See also</u>, <u>Swain v. Spinney</u>, 117 F.3d 1, 11 (1st Cir. 1997).

Board of County Commissioners highlights the special difficulty in finding municipal liability under § 1983 solely on the basis of the actions of an employee, which seems to be the thrust of the Plaintiff's allegations in this case. In order to prevail under § 1983 the Plaintiff must be able to prove that the Municipality itself is involved in a federal law violation or that the Municipality is directing or authorizing the deprivation of federal civil rights. Otherwise, the court will adjudicate liability resting merely on the fact that the Municipality employs a tort-feasor. That is precisely the kind of "respondeat superior" theory rejected by the U.S. Supreme Court in Monell. See Monell, 436 U.S. at 691.

Municipal liability requires that a §1983 plaintiff identify conduct properly attributable to the municipality and also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged.  "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of County Commissioners v. Brown, 520 U.S. 397, 404 (1997).   This, the Plaintiff has failed to plead in the Complaint. See Silverman v. Barry, 845 F.2d 1072, 1080 (D.C. Cir. 1988)(Inadvertent errors, honest mistakes, agency confusion, or even negligence in performance of official duties do not warrant redress under § 1983.)

To establish a municipal policy or custom a plaintiff (1) may point to a decision taken by a duly constituted legislative body or may prove that the deprivation of constitutional rights was the result of decisions made by officials "whose acts may fairly be said to be those of the municipality." See Silva v. Worden, 130 F. 3d 26,30 (15t Cir. 1997), quoting, Pembaur v.

Cincinnati, 475 U.S. 469, 481(1986). The action must be taken by a city official with "final policy-making authority" Rodríguez v. Hurtado, 771 F. Supp. 1245, 1257 (D.Mass. 1991); or the Plaintiff must refer to a relevant practice so "well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLead, 871 F. 2d 1151, 1156 (1st. Cir. 1989). See also Monell, 436 U.S. at 691. The Plaintiff has failed to meet this standard in the Complaint and the imposition of municipal liability is not appropriate here.

**f. The Supplemental Claims Under Puerto Rico Law Should be Dismissed**

Once the claims conferring federal jurisdiction as dismissed from this case for the reasons briefed above, the Court should exercise its discretion and dismiss the supplemental claims arising under Puerto Rico law. Marrero-Gutierrez v. Molina, 491 F.3d 1, 7-8 (1st Cir. 2007); and Campagna v. Mass. Dep't. of Envtl. Prot., 334 F.3d 150, 151, 157 (1st Cir. 2003).

**WHEREFORE**, the Appearing Defendants specially appear and respectfully pray for the dismissal of the Complaint against Appearing Defendants in its entirety for lack of subject matter jurisdiction and failure to state any actionable federal claims and that the Court find that there is no basis for the imposition of municipal liability, assuming only arguendo the allegations of the Complaint are sufficient for the Municipality of San Juan to have been made a party to this case.

**I HEREBY CERTIFY** that on the same date that this document was filed electronically through the CM/ECF system which will send notification to the parties to their registered email addresses. This document will also be served by regular mail to the pro se plaintiff Ramón E. Castro at HC-03 Box 12913, Carolina, PR 00987.

Respectfully submitted in San Juan, Puerto Rico, this 16th day of May, 2025.

**S/ Michael Craig McCall**
MICHAEL CRAIG MCCALL
USDCPR 210412
Tel. (787) 232-4530
Fax: (787) 474-5451
E-mail: mmcall@alblegal.net
 craigmcc@me.com

154 Calle Ensanche Oriente, PMB 511
Humacao, PR 00791

**S/ Damaris Delgado Vega**
DAMARIS DELGADO VEGA
USDC-PR No. 207114
Tel. (787) 914-8292
Fax: (787) 474-5451
E-mail: ddelgado@alblegal.net
delgadovega01@gmail.com

154 Calle Ensanche Oriente, PMB 511
Humacao, PR 00791
**Counsel for the Appearing Defendants**

34